UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 2: 09-36-DCR |
| Plaintiff/Respondent, | ) | and |
| | ) | Civil Action No. 2: 12-7226-DCR |
| V. | ) | |
| | ) | |
| TERRI KELLY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Terri Kelly entered a guilty plea to a charge of conspiring to distribute methamphetamine. She later testified at the trial of her co-Defendant and friend, Connie Avalos. Kelly's testimony was not helpful to the government and, in the opinion of the United States, it was not truthful. As a result, Kelly did not receive the benefit of a motion based upon substantial assistance under the United States Sentencing Guidelines ("USSG"), Section 5K1.1. On November 30, 2009, Kelly was sentenced to a mandatory term of incarceration of 240 months, to be followed by a term of supervised release of ten years. Kelly appealed her sentence; however the United States Court of Appeals for the Sixth Circuit affirmed this Court's judgment on April 5, 2011.

On July 16, 2012, Kelly filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Record No. 142] Through this motion, Kelly seeks to argue some of the same issues that were originally raised before the Sixth Circuit. However, she casts the issues as ineffective assistance of counsel. Having considered the issues raised in the

defendant's § 2255 motion and the government's response[1], the Court will deny the relief requested. In light of the waiver provision contained in the defendant's plea agreement, Kelly may not challenge the issues she seeks to raise by the current motion. And under the facts of this case, Kelly cannot establish a claim of ineffective assistance of counsel.

## I.

### A.        The Indictment, Plea Agreement, and Admissions by the Defendant

Defendant Terri Kelly was named in one count of a six-count indictment returned in the Eastern District of Kentucky on April 9, 2009. More specifically, Count 1 charged that,

> [o]n a date unknown and continuing through on or about February 26, 2009, in Pendleton and Grant Counties, in the Eastern District of Kentucky, and elsewhere, Oshel Casto, Michael Mason, Terri Kelly, and Connie Avalos, and others, did conspire to knowingly and intentionally distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectible amount of methamphetamine, a Schedule II controlled substance, violations of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

[Record No. 3] Prior to this indictment, Kelly had been convicted of drug felonies on two other occasions. As a result, if convicted under Count 1, Kelly faced a mandatory minimum term of incarceration of twenty years. In light of this reality, the defendant decided to enter a guilty plea prior to trial while keeping open the possibility of a lesser sentence by cooperating with the government.[2] The government had substantial evidence supporting Kelly's guilt and two other defendants were willing to testify against her. [*See* Record Nos. 97, 100.] Thus, cooperation

---

[1]        The United States has not asserted that the defendant's motion should be dismissed as untimely. Therefore, the Court will not address that issue in this opinion.

[2]        Defendants Casto and Mason filed motions for rearraignment for purpose of entering guilty pleas on July 31, 2009. [Record Nos. 50, 52] Defendant Kelly's motion for rearraignment was filed August 4, 2009. [Record No. 54] Hearings on all three motions were held on August 7, 2009. [Record Nos. 56, 59, 62]

was only real option for a lesser sentence for Kelly, and there is no indication that the government had offered or would consider anything less.

On August 7, 2009, a hearing was held on Kelly's motion for re-arraignment on Count 1 of the Indictment pursuant to a written Plea Agreement. [Record Nos. 62, 103] The factual basis for Kelly's guilty plea appears at paragraph 3 of this agreement and provides as follows:

(a) On or about February 25, 2009, United States Postal Inspector Karen O'Neill was inspecting packages at the Cincinnati Airport Mail Facility, in Boone County, in the Eastern District of Kentucky, when she observed a suspicious parcel. The parcel was searched pursuant to a warrant and found to contain approximately 53 grams of a mixture or substance containing methamphetamine, a Schedule II controlled substance. The parcel was addressed to Oshel Casto, and mailed by the Defendant.

(b) The following day, Casto was arrested when he picked up the parcel at the Falmouth Post Office in Pendleton County. Casto cooperated with agents and advised that he was supposed to deliver the methamphetamine to Michael Mason for distribution. Casto then made a controlled delivery of the parcel to Mason at his home in Dry Ridge, Grant County, Kentucky.

(c) The Defendant admits mailing parcels containing crystal methamphetamine from California to Casto and Mason in the Eastern District of Kentucky for distribution. The Defendant acknowledges conspiring with Casto, Mason, and Connie Avalos to distribute 1.5 to 5 kilograms of crystal methamphetamine from the end of 2007 and continuing through February 25, 2009. Casto and Mason would wire payment to the Defendant and Avalos, and the Defendant would use the money to obtain methamphetamine from her source. *Avalos was aware that she was picking up money that would be used by the Defendant to purchase methamphetamine that would be shipped to Casto and Mason.* In return for picking up the money, Avalos received money and methamphetamine.

(Italics added.)[3] [Record No. 103]

---

[3] The admission reflected by the italicized portion of this paragraph and Kelly's subsequent conflicting testimony on this point resulted in the defendant losing the opportunity to receive motion from the government to avoid the mandatory minimum term of incarceration of twenty years.

The defendant was able to negotiate a limited waiver of her right to appeal the ultimate sentence imposed in the case. In paragraph 7 of her Plea Agreement, Kelly agreed to waive "the right to appeal and the right to attack collaterally the guilty plea, conviction, and any sentence that does not exceed 240 months imprisonment." [*Id.*] Further, through a supplement to the Plea Agreement, the United States agreed that it would file a motion for downward departure from Kelly's guideline range and for a sentence below the statutory minimum sentence of twenty years *if* the defendant provided substantial assistance in the investigation and prosecution of others. More specifically, the United States sought Kelly's complete and truthful testimony at the trial of her friend and co-defendant, Connie Avalos.

At the beginning of the hearing held on August 7, 2009, the defendant was placed under oath and the Court confirmed that Kelly was competent to enter a guilty plea. The Court further confirmed that the defendant understood the charges against her and was satisfied with the representation provided by her appointed counsel. [Record No. 32, pp. 2-8 ] In addition, Kelly confirmed that she had thoroughly reviewed the Plea Agreement as well as the sealed supplement to that document which contained the provision regarding cooperation. [*Id.* at pp. 8-9]

Counsel for the government and the Court then proceeded to thoroughly review the contents of the Plea Agreement, which specifically included: (i) the elements of the offense charged in Count 1 of the Indictment; (ii) the factual basis for the guilty plea; (iii) potential penalties, including the statutorily-required mandatory minimum term of incarceration; (iv) the parties' non-binding recommendations regarding guideline calculations; and (v) the waiver

provision contained in paragraph 7.  [*Id.* at pp. 9-17]  Kelly and her attorney confirmed that the Plea Agreement had been properly summarized by the Assistant United States Attorney and that it was the sole, operative agreement between the parties.  [*Id.* at p. 11]  She also confirmed that no threats or other promises had been made to induce her to enter into the agreement with the government.  [*Id.* at p. 12]

During the August 7th hearing, the following exchange occurred regarding the applicable statutory penalties:

> THE COURT: The statutory penalties are accurately set forth in your plea agreement in paragraph 4.  Let me take just a moment to go through those with you.  I know Ms. Leonhard has reviewed this, but I need to do this as well.
>
> By virtue of the prior felony drug conviction that has been filed in the case – it's called an 851 notice – the statutory penalties would be enhanced or increased. And the statutory punishment under Count 1 would be a term of imprisonment for not less than 20 years, nor more than life, a fine of not more than $8 million, and a term of supervised release of not less than ten years.
>
> In addition, there's a $100 special assessment that would be applied in your case, and it would be due no later than the time of the sentencing hearing.
>
> Do you understand that those are the maximum penalties that can be imposed by law?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you also agree or acknowledge that you do have a prior felony drug conviction that's listed in the 851 notice that the United States filed?
>
> THE DEFENDANT: Yes.

[*Id.* at pp. 12-13]  After explaining the process that would be followed to calculate the relevant guideline range under the USSGs, the Court identified the statutory factors that would be considered in determining the appropriate sentence in Kelly's case. [*Id.* at pp. 13-16]

At the conclusion of the August 7th hearing, Count 1 of the Indictment was read and Kelly explained that she was guilty of the charge because she had knowingly and intentionally mailed methamphetamine to Defendant Mason during the time alleged. Further, Kelly acknowledged under oath that, if the case proceeded to trial against her, the government could prove the elements of the crime identified in paragraph 2 as well as the facts outlined 3 of her Plea Agreement. In summary, Kelly testified that she intended to enter a guilty plea to Count 1 because she was "in fact" guilty of the crime as alleged. [*Id.* at pp. 19-22]

## B. Kelly's Trial Testimony, the Presentence Investigation Report ("PSR"), and the Sentencing Hearing

Of the four defendants charged in the indictment, only Avalos proceeded to trial. Defendant Kelly was called as a witness during the United States' case-in-chief. Following deliberations, the jury returned a guilty verdict on August 12, 2009. However, due to an apparent attempt to assist Avalos, Kelly's testimony was not helpful to the government.

In response to questions posed by government's attorney, Kelly testified that, during the course of the drug conspiracy, she became concerned with the amount of money she was receiving and asked Avalos to pick up some of the wire transfers to avoid a charge of tax evasion. [Record No. 79, pp. 10-11] Initially, Kelly denied that Avalos was aware of the purpose of the payments.

Q. So it's your testimony today that the defendant [Avalos] knew nothing about the money that she was picking up?

A. Not as far as what we were doing, she did not know.

[*Id*. at p. 15]  As a result of this testimony, Kelly was impeached with her Plea Agreement.  [*Id*. at p. 16-17]  However, the defendant attempted to cling to her earlier statement that Avalos was unaware that the money she was receiving on behalf of Kelly would be used to purchase drugs to ship to other members of the conspiracy.  After further prodding, Kelly gave the following responses to questions by the assistant United States attorney:

Q.  So she knew you were sending methamphetamine to Kentucky?

A.  She knew something was going on.

Q.  Did she know that you were sending methamphetamine to Kentucky?

A.  Yes.

Q.  Is this hard for you to testify against the defendant here today?

A.  Yes, it's hard.

Q.  Do you feel responsible for getting the defendant in this – into this situation?

A.  Yes.

[*Id*. at p. 19]

During cross-examination, counsel for Avalos seized upon Kelly's conflicting account of the events – including her testimony during trial – in an effort to establish that Avalos was not a part of the charged conspiracy.  [*Id*. at pp. 31-34, 38-40]  However, on re-direct examination, Kelly conceded that she had advised Avalos that the money she was picking-up would be used to buy drugs and that the money for those drugs was coming from individuals located in Kentucky.  [*Id*. at p. 49]

As a result of Kelly's contradictory trial testimony, the PSR prepared by the United States Probation Office recommended that Kelly receive an adjustment for obstruction of justice pursuant to USSG § 3C1.1. Additionally, the probation officer responsible for preparing the PSR recommended that Kelly not receive credit for acceptance of responsibility under USSG §§ 3E1.1(a) or (b). [Record No. 116; Sealed PSR, ¶¶ 28, 30] Kelly's counsel objected to this portion of the PSR. [*See Id.* at p. 18; *see also* Record No. 80.] Following arguments of counsel, the Court ruled in favor of the defendant on both issues.

> [THE COURT:] In this particular matter, of course, Ms. Kelly testified in the trial of Ms. Avalos. She was originally called by the United States. And I've gone back and looked at her testimony again with the transcript, and I think it's fair to say that her trial testimony was equivocal. It really depended upon who was asking the question in terms of the answer that was received.
>
> I think it's fair to say that she was – to the extent that she could, she was attempting to help Ms. Avalos; but at the same time, she didn't completely deny the questions from the United States. And so when she was being asked questions by Mr. Alerding on cross-examination, she was providing some testimony that was favorable for Ms. Avalos; and then on redirect by the United States, she provided information that was helpful to the United States. . . .
>
> The second issue is the failure to award credit for acceptance of responsibility. And it would appear that Ms. Kelly did acknowledge her conduct giving rise to her guilty plea in the case. While it may have been equivocal with respect to one of the other defendants in the case, it does appear that she accepted responsibility for her actions in this matter. . . .
>
> ** ** **
>
> So here's the situation we have. We have a situation where the defendant obviously doesn't do enough to earn a 5K motion. I think she has done enough to gain credit for – some credit for acceptance of responsibility, because she acknowledged her part in the offense.[4]

---

[4] At this point in the proceedings, it was clear that the United States would not seek a third level of credit for acceptance of responsibility under USSG § 3E1.1(b). And it is equally clear that the motion would

**       **       **

In this particular case, I'm not prepared to say that when the person equivocates, that they're always going to lose – or they're going to be assessed two points for essentially perjury, or obstruction of justice. It can be case in some situations; and other times, I think it's not the case. Having listened to Ms. Kelly and having seen her emotional state, I am inclined in this case, when I think the Court could very easily accept your [*i.e.,* the government's] argument, I think in this particular case, the Court would be inclined to indicate or make a finding that it doesn't meet the burden of proof necessary to assess the two points, in my mind. . . . [I]t's a close call. It's a razor-thin call.

**       **       **

Now there is a mandatory minimum in this case, and it does come into play here. So what I'm going to do is I'm going to award the defendant two points for acceptance of responsibility. I'm going to remove the two points for obstruction of justice. That has the net effect of reducing the total offense level from 36 down to a 32.

[Record No. 133, pp. 5-6, 11, 12]

Following further arguments of counsel, the Court also concluded that a reduction under

USSG § 5K1.1 and 18 U.S.C. § 3553(e) was not appropriate and would not have been granted

even if a motion for such a reduction had been made by the United States. The government's

refusal to seek a reduction for substantial assistance was not the result of bad faith but, instead,

the defendant's failure to comply with her obligations.

MR. JOHNSON: Well, Judge, I have attempted to convince the assistant for the United States Attorney to file a motion pursuant to 3553(e). However, it's not my understanding that the United States is inclined to do so at this time. And I know we've just had a discussion about this factual issue of testimony, and I think it's incumbent upon me, as Ms. Kelly's counsel, to make an oral motion to compel

---

not have been granted in any event. As noted at page 13 of the transcript of the November 30, 2009, sentencing hearing of the defendant, "[b]efore the Court could award a third level for acceptance credit, it would require a motion from the United States. I wouldn't be inclined to grant it if it were made in this matter." [Record No. 133, p. 13]

– to ask the Court to compel the United States to make a substantial assistance motion pursuant to 3553(e) so that the Court would have the opportunity to sentence her below the statutory mandatory minimum. . . .

** ** **

THE COURT: You really can't say it's bad faith, either.

Mr. JOHNSON: And I can't say it's bad faith. Really, the <u>Wade</u> case, which says, in essence, the refusal to file the motion is based on or – either based on race, religion, which I can't say, or is simply irrational, I think I would probably try to have to rely on it's simply irrational. I know that's a heavy burden, but I feel compelled to make these arguments on her behalf.

THE COURT: All right. Well, I'm not going to require the United States to respond for a couple of reasons. Let me state those.

First, the defendant, in the supplement to her plea agreement, acknowledged that determinations as to whether to file a motion under 5K would be within the sole discretion of the United States. There are circumstances in which the United States may have used [sic] [abused] that discretion and the Court may then require the United States to consider such a motion, or to allow a defendant to withdraw a guilty plea and refusal to do that, but this is not a case such as that.

This is a case in which the defendant, Ms. Kelly, testified ambiguously. And under the five factors that are set forth in section 5K1.1, I will tell you that even if the United States were to ask the Court to consider a motion under 5K1.1 and 3553(e), I would not grant it. So regardless of any issue of motivation, I don't think there's any improper motivation at all by the United States of not filing this motion.

Ms. Kelly prevented herself from getting a further reduction by the manner in which she testified. This was a case that I think may have been – actually, the conviction of Ms. Avalos may have been based on circumstantial evidence more that anything else, certainly more that Ms. Kelly's testimony. Because I think after she finished testifying, two or three different ways, the jury probably threw up it hands with respect to her testimony and may not have even considered what she testified to. . . .

But in looking at this issue of whether the United States should be compelled to file a 5K motion, there's absolutely no support for that whatsoever in reference to this proceeding. But as I indicated, even if the United States filed a 5K motion,

> this is one of those rare cases where the Court, looking at the issue of willfulness
> and the burden that would be required for obstruction, I get to the very edge of
> saying almost by a preponderance of the evidence, didn't quite meet that, but it
> also doesn't come anywhere near to meeting the requirements for a 5K motion.
> So the oral motion to compel the United States to file a motion under 5K1.1 of the
> guidelines and/or Title 18, Section 3553(e) will be denied.

[Id. at p. 15, 18-20]

Based on the foregoing, Kelly simply cannot assert as a factual matter that her attorney: (i) failed to argue that her PSR contained an incorrect guideline calculation for failing to include a reduction for acceptance of responsibility; (ii) failed to argue that her PSR contained an incorrect guideline calculation for including an adjustment for obstruction of justice; (iii) failed to argue that she should receive a downward adjustment from her guideline range based on cooperation under USSG § 5K1.1.  Likewise, she cannot assert that she did not prevail on the first two issues.

As the above discussion clearly demonstrates, Kelly was awarded a two level reduction from her total offense level as originally calculated by the United States Probation Office for acceptance of responsibility.  Additionally, two levels were removed from the original calculation based on the Court determination that Kelly did not obstruct justice.  As a result, her guideline range for imprisonment under the USSGs was amended from 292 to 365 months to 188 to 235 months.  However, by virtue of the statutorily-required term of twenty years imprisonment for the offense, Kelly's guideline range because 240 months of imprisonment.  *See* USSG § 5G1.1(b) ("Where a statutorily required minimum sentence is greater that the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.")

## C.      Kelly's Direct Appeal to the Sixth Circuit

Kelly violated the waiver provision contained in paragraph 7 of her Plea Agreement by filing an appeal following imposition of her sentence. On appeal, Kelly raised the same issues that she attempts to raise in this collateral proceeding. However, those arguments were rejected by the Sixth Circuit. After reviewing the procedural history of the case, including this Court's ruling regarding Kelly's objections to her PSR, the Sixth Circuit identified the following three arguments raised by the defendant on direct appeal: (1) whether the "sentence is procedurally unreasonable when it was based on enhancement of two offense levels for obstruction of justice"; (2) whether the "sentence is procedurally unreasonable when it was based on a guideline range that did not include a two level reduction for acceptance of responsibility"; and (3) whether the sentence was unreasonable because Kelly "was entitled to have the United States file a motion for a downward departure." [Record No. 134]

After concluding that the waiver provision contained in paragraph 7 of Kelly's Plea Agreement was binding and enforceable, the Sixth Circuit addressed the defendant's specific appellate arguments.

> We finally note that the first two of Kelly's arguments inaccurately state the defendant court's conclusions at sentencing. The court in fact denied an enhancement for obstruction of justice and granted a reduction for acceptance of responsibility. Kelly's third argument arguably could be construed as one that the government breached the plea agreement. But the plea agreement left it "solely within the discretion of the United States" as to whether Kelly had provided substantial assistance to warrant a motion [under § 5K1.1 of the USSGs]. In such a case, there is little to review. The government was not bound by the agreement to file a motion to depart, and there is no evidence that "'that the government failed to move for constitutionally impermissible reasons (such as race or religion).'" *United States v. Rashid*, 274 F.3d 407, 417 (6th Cir. 2001) (quoting *United States v. Williams*, 176 F.3d 301, 308 (6th Cir. 1999) (citations omitted).

Kelly concedes in her brief that she "has no proof that the decision of the assistant United States attorney" not to file the motion was grounded on an impermissible basis.

[*Id.* at p. 3-4]

## II.

In support of her present motion, Kelly asserts that her trial attorney provided ineffective assistance based on "three Supreme Court cases that have been decided since her plea and sentencing." [Record No. 142, p. 4]  In a Memorandum of Points and Authorities filed on July 27, 2012, the defendant identifies these cases as: *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), *Missouri v. Frye*, 132 S.Ct. 1399 (2012); and *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). [Record No. 144] These cases provide no support for Kelly's claim of ineffective assistance of counsel under the facts presented here.

In *Missouri v. Frye*, 132 S.Ct. 1399, the Supreme Court recognized that the right to effective assistance of counsel extends to the plea bargaining process.  A defendant may assert a cognizable claim of ineffective assistance of counsel if his attorney fails to inform the defendant of a plea offer provided the defendant is able to demonstrate prejudice.  To establish prejudice in such circumstances, the defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 1409-10.  In the present case, there is no evidence that Kelly was offered a plea bargain which did not include a promised 5K1.1 motion that was not tied to honest and complete testimony at the trial of her co-defendant.  And there is no evidence that this Court would have accepted a binding plea agreement which required the Court to award three levels

of credit for acceptance of responsibility or guarantee the defendant would be sentenced below the mandatory minimum term of imprisonment without providing complete and truthful testimony during Avalos's trial.

Likewise, in *Lafler v. Cooper*, 132 S.Ct. 1376, the Court held that a claim of ineffective assistance can result from incorrect advise given by an attorney in deciding whether to accept or reject a plea offer. Under such circumstances, a defendant must establish that there is a reasonable probability that, but for the erroneous advise, the original plea bargain containing a less severe penalty would have been accepted by the defendant and the court. *Id.* at 1384-85. Again, in the present case, there is no indication that Kelly was offered a better deal that was rejected based on erroneous advise of her attorney.

Finally, the Court's holding in *Padilla v. Kentucky,* 130 S.Ct. 1473, is inapplicable to the facts of this case. *Padilla* holds that, in the context of providing advice to a defendant who may be deported due to his illegal status, the attorney must advise the defendant of that potential consequence. Here, the defendant was advised by the Court of all potential penalties. Kelly acknowledged through the written supplement to her Plea Agreement that the United States would make a motion to reduce her sentence *if* she provided truthful and complete testimony. She may not claim any ambiguity in that regard.

To prevail on a § 2255 motion, a defendant must allege that: (1) her conviction resulted from an error of constitutional magnitude; (2) her sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003). When

alleging a non-constitutional error, a defendant must prove the alleged error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process.'" *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)). In making a § 2255 motion, the movant bears the burden of proving his or her contentions by a preponderance of evidence. *McQueen v. United States*, 58 F.App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

Before addressing the substance of Kelly's claims, the Court must first consider the issue of waiver of her right to collaterally attack the guilty plea, conviction and sentence imposed in the case.[5] That is because a defendant may knowingly and voluntarily waive his or her right to pursue collateral relief in a plea agreement. If valid, the waiver extends to claims of ineffective assistance of counsel. *Davila v. United States*, 258 F.3d 448, 450-51 (6th Cir. 2001). The waiver, however, would not extend to claims that the provision itself was the result of ineffective assistance of counsel. In other words, if Kelly is able to demonstrate that she was mislead regarding the waiver provision or that her plea agreement was the result of ineffectiveness on the part of her attorney, her substantive challenges would not be barred.

In the present case, the Court has found that the defendant's guilty plea was knowing and voluntary and that she fully understood all terms and conditions of the written Plea Agreement,

---

[5]     Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted). Constitutional rights may be waived as long as the defendant does so knowingly and voluntarily. *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995).

including the effect of the waiver of the right to directly or collaterally attack the guilty plea, conviction, and sentence. The language of Kelly's Plea Agreement contains a clear and unambiguous waiver of the right to collaterally attack the defendant's guilty plea, conviction, and sentence imposed. The sentence imposed was within the range authorized by the relevant statutory provision for the offense of conviction. The potential penalties were clearly explained to the defendant before her guilty plea was accepted. Additionally, Kelly clearly understood that neither the Court nor her counsel could accurately predict the guideline range which would be applicable in her case until the presentence investigation report was completed and all objections resolved. However, she clearly understood that she faced a mandatory minimum term of incarceration of twenty years. Further, Kelly agreed in writing that the parties' recommendations regarding guideline calculations would not be binding on the Court. And she acknowledged that the written Plea Agreement contained all of the terms of the parties' agreement. There were no undisclosed terms and Kelly stated under oath that her guilty plea was not the result of threats or force.

While the waiver provision contained in paragraph 7 of the Plea Agreement is valid and enforceable, the Court has also reviewed the substantive claims of ineffective assistance of trial counsel and find them to be totally without merit. When asserting a claim of ineffective assistance of counsel, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d. 959, 964 (6th Cir. 2006) (a movant must prove ineffective assistance of counsel by a preponderance of the evidence). To prove deficient performance, a movant must show that her attorney made errors

"so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A movant may meet this burden by establishing that his attorney's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 687-88. Under this test, judicial scrutiny of the attorney's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. "Deficient performance" is constitutionally prejudicial only when the attorney's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

To prove prejudice, a movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. It must also be noted that, when evaluating the issue of prejudice, courts generally take into consideration the "totality of the evidence" presented to the decision maker *Id.* at 695. Where a claim of ineffective assistance follows a guilty plea, the movant must show that a "reasonable probability exists that, but for counsel's errors, [she] would not have pleaded guilty and wound have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In asserting claims that her trial counsel was ineffective, Kelly makes several arguments which are based on erroneous facts. For example, citing *Missouri v. Frye*, *supra*, she contends that her attorney failed to negotiate a more favorable plea agreement which included a three-level reduction to her Base Offense Level calculation for acceptance of responsibility. *Frye* does not hold that an attorney is ineffective for failing to negotiate a better deal than the only one the

government was willing to accept.[6]  Further, the case does not hold that the attorney for one defendant is ineffective for failing to negotiate a better deal than a separate deal negotiated by another attorney representing another defendant in an unrelated case.[7]  However, in this case, a provision that allowed for a three-level reduction *was included* in paragraph 5(d) of Kelly's Plea Agreement. [Record No. 103]  This is a standard provision and, like all non-binding plea agreements in this district, conforms to USSG §3E1.1.  To obtain a third level of reduction under this provision, the government must make a motion which is either sustained or rejected by the Court.

Here, the defendant did not obtain a third level of reduction due to any error of her attorney.  Instead, the opportunity was there, but Kelly failed to satisfy subsection (b) of the guideline provision.  As noted above, based on the defendant's trial testimony, the Court would not have awarded the third level of responsibility credit even if the United States had filed a motion seeking such a reduction to Kelly's base offense level.  This determination is not altered by Kelly's "feelings" that a third level of reduction was appropriate.  Likewise, *even if* Kelly had received a three level reduction for acceptance or responsibility, it would not have altered her

---

[6]      At page 5 of her supporting memorandum, Kelly asserts that she was never informed by her attorney that testifying against Avalos could result in an obstruction of justice charge which resulted in two levels being added to her guideline calculation, effectively negating the two level reduction she received for acceptance of responsibility.  An attorney is not ineffective for failing to advise a defendant not to lie under oath.  But that point is irrelevant because Kelly's factual premise is false.  She did not receive a two level increase to her total offense level for obstruction.  As outlined above, the Court granted Kelly's objection and removed the two levels for obstruction of justice from her guideline calculations.

[7]      Contrary to other arguments contained in Kelly's memorandum [Record No. 144, p. 4], the Court notes that, in this district, parties do not negotiate away criminal history points.  Applicable convictions are listed in the Criminal History section of PSRs and properly scored, initially by the Probation Officer responsible for preparing the report, and finally by the Court at the sentencing hearing.

guideline range which was driven by the mandatory minimum sentence of 240 months. Thus, to establish prejudice, Kelly must show that her attorney was ineffective in negotiating or arguing for a reduction under USSG 5K1.1 and 18 U.S.C. §3553(e). As the above discussion amply demonstrates, the supplement to Kelly's Plea Agreement provided for a reduction of the defendant cooperated with the government. In fact, Kelly's attorney attempted to force the United States to make such a motion even after the defendant failed to live up to her end of the agreement; however, he was unsuccessful. But even if the motion had been made by the government, the Court explained on the record why it would not have been granted.

Finally, Kelly's attorney was not ineffective for allegedly failing to explain the waiver of her right to appeal her conviction and sentence.[8] The waiver was fully explained to Kelly during the rearraignment hearing held on August 7, 2009. At that time, Kelly acknowledged that she understood the consequences of the waiver. Her current assertions that the wavier was not voluntary or entered into unknowingly is foreclosed by her admissions and by this Court's determination that she was fully competent and knowledgeable of all relevant provisions. *See United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) ("Entry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard.").

It is clear that Kelly knew from the Plea Agreement as well as the discussions regarding the statutory penalty that she could be sentenced to the ultimate term of imprisonment imposed

---

[8]     The Sixth Circuit dismissed Kelly's appeal based on the validity of the waiver provision contained in paragraph 7 of her Plea Agreement. However, the court also considered and rejected the defendant's substantive arguments, albeit in dictum.

by the Court. She also knew that sentencing would be the result of information not fully known at the time of her guilty plea. Kelly has not shown – and has not argued – that there is a reasonable probability that, but for the alleged errors of her counsel, she would not have pleaded guilty and insisted on going to trial. Thus, she has not alleged or offered any proof of prejudice. *McAdoo v. Elo*, 365 F.3d 487, 498 (6th Cir. 2004) (quoting *Hill v. Lockhart*, 106 S.Ct. 366 (1985), for the proposition that, "to satisfy the 'prejudice' requirement in a plea agreement context, 'the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"). In short, Kelly has not offered any proof of ineffectiveness on the part of her trial counsel and she has not demonstrated that she is entitled to collateral relief under 28 U.S.C. § 2255.

### III.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     Defendant/Movant Terri Kelly's motion to vacate, set aside, or correct the judgment previously entered in Criminal Action No. 2: 09-36-DCR [Record No. 142] is **DENIED**.

2.     Civil Action No. 2: 12-7215-DCR is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3.     A separate, final and appealable Judgment shall be entered in the habeas action on this date.

This 17th day of October, 2012.



Signed By:

*Danny C. Reeves*

United States District Judge